EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | 2021 TSPR 113 |
|---|---|
| Designación de Miembros de la Comisión de Evaluación Judicial | 207 DPR ____ |

Número del Caso:  EN-2021-02

Fecha: 29 de julio de 2021

Materia: Resolución del Tribunal con Votos particulares de conformidad y Votos particulares disidentes.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| *In re:*<br><br>Designación Miembros<br>de la Comisión de Evaluación<br>Judicial | EN-2021-2 | |

RESOLUCIÓN

En San Juan, Puerto Rico, a 29 de julio de 2021.

La Regla 4(A) del Reglamento para la Evaluación de Jueces y Juezas del Tribunal de Primera Instancia, 4 LPRA Ap. XXXVII, dispone que la Comisión de Evaluación Judicial (Comisión) estará compuesta por un presidente o presidenta y diez (10) miembros nombrados por el Tribunal Supremo. Al amparo de esta disposición, se designan a las personas siguientes como miembros de la Comisión en los cargos que se indican a continuación:

Hon. Maite D. Oronoz Rodríguez, Presidenta
Lcdo. Tomás Román Santos
Prof. Glenda Labadie Jackson
Lcda. Yvonne Feliciano Acevedo
Lcdo. Luis Rosario Villanueva
Lcdo. Carlos Santiago Tavárez
Lcdo. Néstor S. Aponte Hernández
Lcdo. Jorge Lucas Escribano Medina
Lcda. Arytza Martínez Rivera
Lcdo. Roberto Rodríguez Poventud
Dra. Iris N. López Sánchez

Conforme dispone la Regla 4(B) y (C) del Reglamento, los miembros de la Comisión ocuparán sus cargos por un término de tres (3) años o hasta que sus sucesores o sucesoras sean nombrados y tomen posesión del cargo.

Estos nombramientos entrarán en vigor inmediatamente.

El Tribunal Supremo agradece a los miembros de la Comisión que hoy cesan en sus funciones por los años de compromiso y dedicación para con este Tribunal y el Pueblo

de Puerto Rico. Su labor desprendida contribuyó a la capacitación de los jueces y las juezas del Tribunal de Primera Instancia, así como, a mejorar el sistema judicial. A los nuevos miembros y aquellos que hoy revalidan en sus cargos, el Tribunal agradece su disposición de servir a la ciudadanía a través de la Comisión.

Publíquese.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo Interina. La Jueza Asociada señora Pabón Charneco emite Voto Particular de Conformidad al cual se unen el Juez Asociado señor Kolthoff Caraballo y el Juez Asociado señor Rivera García. El Juez Asociado señor Rivera García emite Voto Particular de Conformidad al cual se unen la Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Kolthoff Caraballo. El Juez Asociado señor Kolthoff Caraballo hace la expresión siguiente:

"Estoy conforme con la Resolución que hoy certifica este Tribunal. Sin embargo, me veo obligado a emitir estas cortas expresiones, más que en defensa de un nombramiento en específico, en defensa del principio de la tolerancia que nos debe aplicar a todos por igual.

Con la honrosa excepción del Lcdo. Luis Rosario Villanueva y la Lcda. Yvonne Feliciano Acevedo, tal vez ningún otro miembro de la Comisión de Evaluación Judicial contará ahora con más experiencia en la Judicatura y más conocimiento de primera mano de los retos que enfrentan nuestros jueces de primera instancia que el Lcdo. Jorge Lucas Escribano Medina. El licenciado Escribano Medina se despidió honrosamente de la judicatura en el año 2014, después de una brillante carrera de casi veinte años, en los que se desempeñó como juez de distrito, juez superior y juez del Tribunal de Apelaciones. Sus credenciales como jurista son sencillamente impecables y su comprensión de lo que entraña ser un juez de carrera es valiosísima.

Sin embargo, y lamentablemente, hoy recibe el rechazo apasionado de algunos distinguidos miembros de este Tribunal. Ahora bien, a pesar de lo que esbozan los compañeros que disienten de este nombramiento, su rechazo obedece en realidad a una sola cosa: a que el licenciado Escribano Medina es un creyente en la fe cristiana que no suele permanecer callado cuando siente que es necesario llamar la atención a lo que él entiende son situaciones que atentan contra la permanencia

de los valores cristianos de nuestro Pueblo. La pregunta es: ¿pero acaso no tiene derecho a eso?

Todo el problema se resume en realidad a que el licenciado Escribano Medina supuestamente ha hecho manifestaciones públicas que se enmarcan en la defensa de lo que son sus convicciones cristianas. En primer lugar, habría que tomar con mucho cuidado lo que algún medio dice que dijo el licenciado Escribano Medina. No han sido pocas las ocasiones que algún medio cita como expresiones públicas de este servidor cosas que no han sido ciertas o que se han sacado fuera de contexto. En segundo lugar, habría que preguntarse si el hecho de que una persona haga expresiones que atentan contra las ideologías que algunos de los miembros de este Tribunal esbozan y defienden con la misma pasión extrema que le adjudican al licenciado Escribano Medina, eso lo descalifica para aportar su conocimiento, experiencia y, porque no, sus visiones ideológicas, al servicio de la Rama Judicial. A no ser que sólo califican aquellos cuyas ideologías no chocan con las de estos compañeros. O tal vez sí se puede tener ideologías diferentes, siempre y cuando se mantengan a puerta cerrada y no se haga mucho alboroto.

No puede ser así. La tolerancia no es un arma para que nuestras ideas prevalezcan, sino un instrumento de paz y armonía cuando se da la divergencia".

La Jueza Presidenta Oronoz Rodríguez y el Juez Asociado señor Colón Pérez emiten Voto Particular Disidente. El Juez Asociado señor Estrella Martínez disiente con las expresiones siguientes:

"El Juez Asociado señor Estrella Martínez disiente y hace constar las expresiones siguientes:

La Comisión de Evaluación Judicial (Comisión) ocupa dentro de nuestro ordenamiento jurídico una posición de suma trascendencia y envergadura, pues el despliegue de sus funciones permite imprimirle certidumbre y firmeza a los procesos deliberativos y evaluativos con respecto al desempeño de los jueces y juezas del Tribunal de Primera Instancia. En vista de tal indispensable función, la preservación de su prestigio y fiabilidad exige una composición de personal que no sea lesiva a los pilares de la independencia judicial, ni desaliente el rol de la judicatura como guardianes de los derechos individuales de todos los sectores

de nuestra sociedad, incluyendo los marginados, oprimidos y discriminados.

Sin embargo, la *Resolución* que hoy se certifica promueve una ruta que nos aleja de tales aspiraciones. Ello, por tratarse del fruto del importe de estilos de selección que han sido contraproducentes en la búsqueda del debate y el entendimiento durante el reclutamiento de talento para las diversas comisiones del Poder Judicial. Al mediar otros asuntos que no deberían servir de guía en el curso de nuestras labores, se ha perdido de vista el norte de nuestro rol: reformar las funciones y fortalecer el alcance de la Comisión.

Considero que procedía ejercer nuestro poder de nominación y confirmación de una forma más equilibrada. A la luz de la posición tan neurálgica que ocuparán los miembros de la Comisión, nuestra responsabilidad al momento de efectuar los nombramientos debería manifestarse como el resultado de un diálogo sosegado, focalizado y ecuánime. A mi juicio, nada más lejos de ello sirvió como el trasfondo para los nombramientos que hoy se hacen públicos y dejan al descubierto las grietas en este Tribunal. La consecuencia de tal acción por parte de una Mayoría de este Tribunal abonará a menguar la deferencia que exhiben las ramas políticas a la autoridad que debería ostentar la Comisión, como también al desdén de la población en general. Hoy, en vez de obrar en contra de estas tendencias y reforzar la dignificación y la credibilidad de la institución, la debilitamos.

Mi respeto por el activismo de los diversos sectores de la sociedad y mi compromiso con garantizar su derecho a expresarse es incuestionable y se mantiene incólume. Ahora bien, al igual que en el proceso de selección de jueces y juezas, me parece que en el de evaluación judicial también debemos ser prudentes en el rol que le adscribimos a personas activistas, de cualquier extremo del espectro sociopolítico, que promuevan mensajes de odio y que reproduzcan conductas discriminatorias y peyorativas hacia grupos históricamente marginados. Por consiguiente, no puedo consentir a que personas que se caractericen por tales patrones de comportamiento formen parte de la Comisión que evalúa a los miembros de nuestra judicatura.

Las expresiones que hoy expongo en esta *Resolución* constituyen un llamado a la consciencia

de lo realmente prioritario de esta Comisión, lo cual se hubiera visto enriquecido por la búsqueda del acuerdo, el diálogo colegiado y la persecución de un fin objetivo. Por lo apresurado de este proceso y la presencia de factores subjetivos que no deberían tener lugar en esta discusión, no se facilitó la creación del espacio necesario para una ponderación profunda y compleja de los recursos que gozan del respeto de la sociedad y la comunidad jurídica cuyas aportaciones hubieran sido invaluables. Existen juristas que merecían ocupar esa silla y que están dispuestos a proteger el interés público y poner a un lado consideraciones personales o subjetivas que no deben ser importadas al momento de ser parte instrumental del Poder Judicial.

Ello, en fin, deja un saldo negativo para la credibilidad de la institución y los poderes de la Comisión. Así, la decisión que hoy afirma una Mayoría de este Tribunal representa un ejercicio de poder extremista y desmedido. Desmedido, porque tan reciente como en el 2019, una Mayoría de este Tribunal reconfiguró la Comisión y cuenta con el grueso de los miembros, tomando en cuenta que se concedió a todos los jueces y juezas de este Tribunal el poder del voto en las deliberaciones de la Comisión, entre otras modificaciones. Extremista, porque se persigue seguir implantando una visión ultraconservadora y poco garante de los derechos de las minorías, no solamente en la jurisprudencia, sino también en la operación de esta importante Comisión. El extremismo basado en el odio, el discrimen, la mofa y las ofensas representa una visión que se aleja de los postulados que, paradójicamente, algunos utilizan para validar esa conducta. En consecuencia, el mensaje que este Tribunal le envía a nuestros jueces y juezas y a la sociedad es nefasto. Esos estilos no deben tener cabida en la sociedad, mucho menos en los organismos rectores del Poder Judicial. Ante el curso de acción de una Mayoría de este Tribunal, disiento."

Bettina Zeno González
Secretaria del Tribunal Supremo Interina

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| *In re*: | |
| Designación Miembros de la Comisión de Evaluación Judicial | EN-2021-2 |

Voto Particular de Conformidad emitido por la Jueza Asociada señora Pabón Charneco al cual se une el Juez Asociado señor Kolthoff Caraballo y el Juez Asociado señor Rivera García

En San Juan, Puerto Rico, a 29 de julio de 2021.

Mucho se habla de cambio y diversidad públicamente, mientras los actos demuestran el interés de mantener el estado actual de las dependencias internas. Así, y en lo que nos compete hoy, la composición parcial de la Comisión de Evaluación Judicial (Comisión) se ha prolongado por décadas. Es por esta razón que yo suscribo los nombramientos que una Mayoría del Tribunal ha considerado diligentemente para tan importante Comisión.

Sin embargo, las designaciones que hoy hacemos han sido criticadas por algunos miembros del Tribunal, lo que me ha obligado a expresarme sobre esta situación. Esto, pues soy de la opinión de que no deben excluirse individuos como miembros de la Comisión solamente porque piensan distinto a quienes los designan y aún menos cuando las diferencias de criterio que puedan tener no tienen relación con las funciones que llevarán a cabo.

Debemos recordar que las juezas y jueces del Tribunal de Primera Instancia representan al Poder Judicial ante la ciudadanía. Día a día, son a quienes las personas acuden en busca de una solución a sus problemas. Por lo tanto, al aceptar tan importante encomienda, deben cumplir y demostrar un buen desempeño mientras ostenten su cargo. Esto es particularmente esencial en momentos en que muchas instituciones son cuestionadas, incluyendo los tribunales.

Para lograr el más alto estándar de desempeño de las juezas y los jueces, el Tribunal Supremo cuenta con la Comisión de Evaluación Judicial. Para ello, designa diez (10) miembros que ocuparán su cargo por tres (3) años y mientras gocen de la confianza del Tribunal. Esta comisión tiene el mandato de evaluar sus ejecutorias, así como, identificar sus fortalezas y deficiencias a través del análisis de una serie de criterios precisados en el *Reglamento para la evaluación de jueces y juezas del Tribunal de Primera Instancia*, 4 LPRA Ap. XXXVII. **Por lo tanto, el funcionamiento efectivo de la Comisión es vital para la marcha correcta y saludable del Poder Judicial.**

Por reconocer la importancia de que se lleven a cabo evaluaciones justas y rigurosas, desde hace años asisto a todas las reuniones de la Comisión como miembro *ex officio* y participo activamente en las evaluaciones al igual que la Jueza Presidenta y demás miembros de la Comisión. Tengo esta potestad como Jueza Asociada del Tribunal Supremo de Puerto Rico. Aunque previamente apoyé por deferencia los

nombramientos recomendados por la Jueza Presidenta, mi participación constante durante los pasados años en las reuniones de la Comisión me permite opinar responsablemente sobre su funcionamiento y sobre la importancia de nuevos nombramientos. Así, aunque el sistema de evaluación diseñado en el Reglamento tiene como objetivo garantizar un procedimiento de evaluación justo para las juezas y jueces, hay espacio para mejorar en su consecución. Principalmente es indispensable reconocer la necesidad de un flujo de miembros nuevos y diversos. Esto, pues **hasta hoy existían miembros ocupando sus cargos por casi dos (2) décadas.** Por lo tanto, para bien o para mal, las juezas y los jueces eran evaluados periódicamente por las mismas personas. **En este tipo de Comisión y por su importancia no pueden existir cargos vitalicios.**

Por otro lado, la Comisión también se beneficiará de una mayor diversidad. La diversidad no se logra nombrando a miembros con posturas similares a quienes los nominan. Por el contrario, es importante seleccionar a individuos con independencia de criterio y profesionalismo. Así, el Lcdo. Jorge Lucas Escribano Medina fue un juez de carrera que conoce las distintas instancias de nuestros tribunales y, por ende, conoce el sistema de evaluación del que ahora es miembro. Asimismo, durante sus diecinueve (19) años como juez, fue nominado y ascendido por distintos gobernadores, confirmado por varias composiciones del Senado y evaluado favorablemente por las pasadas Comisiones

de Evaluación Judicial. Durante todo ese tiempo su imparcialidad y profesionalismo no fueron cuestionadas. Sin embargo, hoy algunos compañeros jueces tratan de mancillar la reputación que había creado tras décadas como servidor público. Esto por expresiones religiosas que hiciera fuera de estas funciones. Debo recordar, que como miembro de la Comisión, la función del licenciado Escribano Medina, en unión a los demás miembros, se limita a evaluar a las juezas y los jueces a base de varios criterios previamente dispuestos en el Reglamento. Entre estos criterios se encuentran la integridad, reputación pública e intelectual, destrezas profesionales, capacidad de análisis, laboriosidad y temperamento de los evaluados. Nada en el récord del licenciado Escribano Medina sugiere que no pueda cumplir con esta tarea de forma profesional. Por el contrario, este conoce cabalmente el funcionamiento de la Comisión y considero que su experiencia podrá nutrir el procedimiento de evaluación y aportar junto a los demás miembros. Por todas estas razones, respaldo los nuevos nombramientos que hoy se hacen, entre ellos el del licenciado Escribano Medina.


Mildred G. Pabón Charneco
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | | |
|---|---|---|
| Designación Miembros de la Comisión de Evaluación Judicial | EN-2021-2 | |

**Voto Particular de Conformidad emitido por el Juez Asociado señor RIVERA GARCÍA, al cual se une la Jueza Asociada señora PABÓN CHARNECO y el Juez Asociado señor KOLTHOFF CARABALLO.**

En San Juan, Puerto Rico, a 29 de julio de 2021.

Hoy nos compete ejercer nuestra función constitucional de administrar una dependencia importante para el funcionamiento eficaz y transparente de la judicatura de Puerto Rico. De esta forma, este Tribunal emite la presente Resolución en torno a la Comisión de Evaluación Judicial, cuyas medidas van dirigidas a robustecer la independencia del Poder Judicial.

Lamentablemente, algunos compañeros de este Tribunal, con sus expresiones, precisamente atentan contra el principio de la independencia judicial. Estas van al extremo de imputarle a la Mayoría de este Tribunal concepciones que se alejan de su trayectoria jurisprudencial e intentan menoscabar la confianza pública en nuestra institución. Desafortunadamente, expresiones de esta naturaleza, laceran, no solo a los miembros de la Mayoría, sino que intentan asesinar la institución del Poder Judicial. Hoy, algunos hermanos de la minoría, en su afán de imponer su

criterio, pretenden masacrar la integridad y los valores que enaltecen a los jueces y juezas de esta Curia. Incluso, las desacertadas expresiones de un compañero llevan implícitamente actos inequívocamente dirigidos a llevar al paredón de fusilamientos la libertad de expresión que nos cobija a todos. No empece a los esfuerzos fútiles de la minoría, aprovechamos la ocasión para resaltar el proceder que hoy avala la Mayoría de este Tribunal.

***

La confianza ciudadana en nuestro sistema judicial depende en gran medida de la idoneidad de las personas que ocupamos los estrados de las cortes de justicia. **Por ello, precisamente, la evaluación de jueces y juezas juega un papel fundamental en el mejoramiento del desempeño judicial.** Empero, la pregunta que inmediatamente surge de esa irrefutable lógica sería ¿cómo alcanzar esa idoneidad entre las personas llamadas al ejercicio del cargo judicial? Ante tales planteamientos, fue cómo surgió la Comisión de Evaluación Judicial.

La *Comisión de Evaluación Judicial* (Comisión) fue creada por esta Curia mediante *Resolución* el 10 de octubre de 1988. Esto, luego de celebrarse ese mismo año una sesión especial de la Conferencia Judicial (Conferencia) donde se discutió y reconoció, precisamente, la importancia de contar con un sistema para evaluar el desempeño de los miembros de la Judicatura. Asombrosamente y contrario a las

otras ramas del Gobierno, hasta ese entonces el Poder Judicial no estaba sujeto a un proceso de evaluación. Por ende, la Conferencia Judicial reconoció que la adopción de un sistema de evaluación de jueces y juezas era un paso imprescindible para robustecer y arraigar el principio de independencia judicial. Según estimó la propia Conferencia, la independencia judicial "está inextricablemente atado[a] al ejercicio riguroso de una fiscalización que abarque el mejoramiento del desempeño judicial, el aspecto disciplinario y el compromiso de rendir informes periódicos a la comunidad sobre la labor de la Judicatura". Véase *In re: Conferencia Judicial de Puerto Rico, sesión especial*, 122 DPR 420, 421 (1988).

En vista de lo anterior, le encomendamos a la Comisión la responsabilidad de evaluar con regularidad y periodicidad a los jueces del Tribunal de Primera Instancia, incluyendo los que pertenecían al entonces Tribunal Municipal. Según dictaminamos, la Comisión ejercería sus funciones de manera autónoma y tendría injerencia en todos los asuntos de política administrativa relacionados al desarrollo, implantación y administración de las evaluaciones judiciales.

En sus inicios, la Comisión estuvo integrada por un Juez del Tribunal Supremo, quien fungía como su presidente, y ocho (8) miembros adicionales. **Su diseño fue de un <u>cuerpo colegiado</u> que pudiera imprimir mayor certeza al proceso**

**decisional de sus miembros al momento de evaluar las ejecutorias de los jueces y juezas que componen el Tribunal de Primera Instancia**. En ese sentido, resulta pertinente señalar que, un cuerpo colegiado en su concepción más elemental se puede definir mediante el principio de la actuación colectiva entre sus miembros, que no es otra cosa, que la toma de decisiones de manera conjunta. Asimismo, lo razonó hace ya más de una década el entonces Juez Presidente de este Tribunal, Hon. Hernández Denton, cuando definió que un foro colegiado, "es un cuerpo cuyos miembros deliberan en conjunto antes de tomar decisiones".[1] Es decir, y como hemos expresado, un cuerpo colegiado emite decisiones colectivas mediante un proceso ponderado de deliberación y discusión entre sus miembros. De esta forma, es que verdaderamente se alcanza una sabiduría superior que, de otro modo, sería inalcanzable aisladamente por cada miembro de ese cuerpo. Asimismo, se cumple con el propósito de la Comisión en proveer la información más adecuada que fomente el compromiso de los jueces y juezas con su propio mejoramiento profesional y a su vez, se atienda eficazmente las necesidades de la judicatura.

Por otro lado, mediante la Ley Núm. 91 de 5 de diciembre de 1991, la Asamblea Legislativa estatuyó la Comisión de Evaluación Judicial como parte integral del

---

[1] In re Solicitud Aumentar Núm. Jueces TS, 180 DPR 54, 112 (2010).

sistema de evaluación de los jueces y de los candidatos al cargo. No obstante, por el respeto a la separación de poderes, y en deferencia a nuestra facultad constitucional de reglamentar los asuntos que conciernen la administración judicial, por virtud de la Ley Núm. 45-2010 la Asamblea Legislativa eliminó la facultad que tenía el(la) Juez(a) Presidente(a) de designar a los miembros de la Comisión de Evaluación Judicial y extrajo dicha dependencia de la Oficina de este funcionario, a la cual estuvo adscrita desde que esta se creó mediante la Ley 91-1991. Congruente con esa visión, mediante la Ley Núm. 120—2017 la Asamblea Legislativa posteriormente decidió derogar por completo todo lo relacionado con la Comisión de Evaluación Judicial, para permitir que este Tribunal, en el ejercicio de nuestra discreción constitucional, sea el ente que reglamente la judicatura.[2]

En atención a nuestra facultad constitucional de reglamentar la administración de los tribunales, el 23 de

---

[2] La Constitución de Puerto Rico, en su Artículo V, Sección 7, LPRA Tomo 1, establece que "el Tribunal Supremo, adoptará reglas para la administración delos tribunales las que estarán sujetas a las leyes relativas a suministros, personal, asignación y fiscalización de fondos, y a otras leyes aplicables en general al gobierno. El Juez Presidente, dirigirá la administración de los tribunales y nombrará un director administrativo, quien desempeñará su cargo a discreción de dicho magistrado." De esa manera, al Tribunal Supremo se le delegó la autoridad de adoptar reglas de administración de los tribunales y al (a la) Juez(a) Presidente(a) la facultad de dirigir la administración de los tribunales y de asignar un Director Administrativo. Véanse, a manera de ejemplo, In re Aprobación de las Reglas para los Procedimientos de Investigaciones, 184 DPR 575, 582 (2012); In re Disposiciones del Código Electoral de Puerto Rico para el Siglo XXI, 184 DPR 369 (2012); In re: Aprobación del Reglamento de Subastas Formales de la Rama Judicial, 2017 TSPR 35. Véase, también, Diario de Sesiones de la Convención Constituyente de Puerto Rico 2613 (Ed. 1961).

febrero de 2018 adoptamos el *Reglamento para la Evaluación de Jueces y Juezas del Tribunal de Primera Instancia* (Reglamento) y fijamos en nueve (9) el número de miembros de dicha Comisión. Véase *In re: Reglamento Evaluación Js. TPI*, 199 DPR 904 (2018). Poco después, el 18 de julio de 2018, enmendamos la Regla 4 del Reglamento para disponer que la Comisión estaría compuesta de un presidente o una presidenta y nueve miembros nombrados por el Tribunal Supremo. Esto ocasionó que la Comisión quedara constituida por un número par de miembros (diez incluyendo a la Jueza Presidenta). Véase *In re: Designación Miembros de la Comisión de Evaluación Judicial,* 200 DPR 825 (2018).

En virtud de nuestro poder constitucional, el 5 de abril de 2019 enmendamos la Regla 4(A) y la Regla 19(B) del Reglamento, para añadir un miembro adicional y para aclarar el alcance de la participación de los Jueces y Juezas del Tribunal Supremo en las reuniones o actividades de la Comisión. Es decir, ya que la Comisión no está adscrita a la presidencia sino al Tribunal Supremo en Pleno, enmendamos el Reglamento para que los jueces de este Tribunal pudieran participar en las deliberaciones de dicho organismo. De esta forma, buscamos evitar que esta rama se administre como si fuera una monarquía a espaldas de los Jueces Asociados que componen este Tribunal. Véase *In re: Enmiendas a las Reglas 4 y 19 del Reglamento para la Evaluación de Jueces y Juezas del Tribunal de Primera Instancia*, 202 DPR 149 (2019).

En armonía con esa visión y con el claro mandato constitucional para desarrollar la política administrativa de la Rama Judicial, desde entonces, actuando como cuerpo colegiado, con nuestro voto y el de los otros miembros, tenemos injerencia directa en la toma de decisiones de la Comisión. **Es precisamente por esto, la importancia de la diversidad de conocimientos entre los miembros de la Comisión pues ahí es donde verdaderamente radica la pluralidad de ideas y criterios que al convergir dan paso para extrapolar las mejores cualidades que hacen a una persona idónea para ejercer el cargo judicial para el cual está siendo evaluada.** En atención a ello, el rol de los Comisionados debe estar permeado de independencia de criterio, diligencia, imparcialidad, agilidad y sensibilidad al momento de evaluar el desempeño de los Jueces.

Como sabemos, Puerto Rico experimenta una diversidad de problemas sociales y económicos que inciden de forma dramática en todas las instituciones sociales y sobre los cimientos éticos. En consecuencia, observamos una sociedad cada vez más litigiosa en todos los ámbitos de la vida y, por ende, mayores desafíos al sistema judicial. A la luz de esta realidad, se requiere que los miembros de la Comisión estén ávidos a escuchar con rigor y detenimiento las posturas de los miembros de ese foro colegiado. Así también, deben exigir ser escuchados en los procesos deliberativos ante su consideración. De este modo, se

propicia la dinámica participativa en este cuerpo colegiado y a su vez se fortalece el entendimiento y la razón. Por ello, es transcendental apuntalar, que, en el proceso deliberativo de esta Comisión, es preciso que haya diferencias de criterios y posturas previo a la toma de decisiones. Esta diversidad es saludable y necesaria en la búsqueda de la justicia y la verdad. **Es por ello, que estamos contestes que en toda discusión y análisis de controversias, debe permear el respeto a la diversidad de opiniones y a los principios que rigen la democracia.**

En la actualidad, y según dispone la Regla 4(a) *para la Evaluación de Jueces y Juezas del Tribunal de Primera Instancia*, 4 LPRA Ap. XXXVII, la Comisión está compuesta por un presidente o una presidenta, diez miembros nombrados por el Tribunal Supremo en Pleno, y los jueces del Tribunal Supremo, para un total de diecinueve (19) miembros.

Mediante la presente Resolución, en virtud de nuestro poder constitucional inherente, y en aras de continuar desarrollando la institución de la judicatura en pro de la ciudadanía, este Tribunal hoy designa a cuatro (4) nuevos miembros para que ocupen el espacio de los miembros que se le venció su término. De igual forma, este Tribunal agradece a los miembros de la Comisión que hoy cesan sus funciones por sus años de servicio y dedicación para con esta Curia y el Pueblo de Puerto Rico. Su labor desprendida contribuyó significativamente al acervo profesional de los jueces y las juezas del Tribunal de Primera Instancia, así como a

mejorar el sistema judicial. A los nuevos miembros y aquellos que hoy revalidan en sus cargos, este Tribunal agradece su disposición de servir a la ciudadanía a través de la Comisión. En atención a estas consideraciones, estoy conforme con las designaciones de los comisionados que integrarán la Comisión de Evaluación Judicial.


                              Edgardo Rivera García
                                 Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re:*
Designación Miembros de la
Comisión de Evaluación
Judicial

EN-2021-2

Voto Particular Disidente emitido por la JUEZA PRESIDENTA ORONOZ RODRÍGUEZ.

En San Juan, Puerto Rico, a 29 de julio de 2021.

El fortalecimiento de la confianza pública en el Poder Judicial depende en gran medida de la idoneidad de las personas que ejercen el cargo de juez o jueza. Por ello, su evaluación juega un rol fundamental en el mejoramiento del desempeño judicial y en el compromiso que tiene el Poder Judicial de Puerto Rico de rendir cuentas al País sobre la labor que realiza nuestra Judicatura. In re Conferencia Judicial de P.R., 122 DPR 420, 421 (1988). Se trata de un proceso que por su importancia palmar, tiene que estar impregnado de independencia e imparcialidad. Por eso, disiento de la determinación de cinco miembros de este Tribunal de: 1) trastocar --por cuarta ocasión en apenas tres (3) años-- el funcionamiento de la Comisión de

Evaluación Judicial, sin fundamento válido o razonable alguno y 2) avalar expresiones discriminatorias al nombrar a una persona que abiertamente ha demostrado total menosprecio por la dignidad de grupos minoritarios que buscan acceder a la justicia. Las expresiones públicas de esa persona lo descalifican para pertenecer a una comisión que evalúa la labor de jueces y juezas, y cuyo mandato principal es adjudicar controversias con imparcialidad, ecuanimidad e independencia.

Este ejercicio deslavazado aparenta procurar controlar las evaluaciones de desempeño que reciben nuestros jueces y juezas. Como se recordará, el saldo de las primeras tres (3) intervenciones fue crear una Comisión con diecinueve (19) participantes.[3] Ahora, se procura despojar a este organismo de integrantes con una experiencia incomparable, **de criterio propio**, y quienes le han servido bien y desinteresadamente a la Comisión y al País. Este curso de acción jamás debió prosperar.

El objetivo principal de la Comisión de Evaluación Judicial es realizar evaluaciones que permitan identificar las áreas en las que cada juez o jueza posee mayores destrezas y en que mejor se desenvuelve, y aquellas que necesita fortalecer o mejorar. A través de este proceso, el juez o jueza recibe información valiosa que le permite llevar a cabo un ejercicio de auto-reflexión que promueve

---

[3] *Véase* In re Reglamento Evaluación Js. TPI, 199 DPR 904 (2018); In re Desig. Miembros Com. Eval. Jud., 200 DPR 825 (2018); e In re Enm. Reglamento Evaluación Js. TPI, 2019 TSPR 62.

el fortalecimiento de sus destrezas y su crecimiento profesional. El fin es tener una Judicatura de excelencia que cumpla de manera cabal con las exigencias del puesto y de la ciudadanía, y que se esfuerce por facilitar y agilizar de forma eficiente el acceso a la justicia para todos y todas. La Comisión de Evaluación Judicial es el organismo formal del Poder Judicial que, junto al Comité Asesor de Nombramientos Judiciales de la Oficina del Gobernador, integran el sistema de evaluación de jueces y juezas y candidatos a jueces y juezas creado por la Ley Núm. 91-1991, según enmendada.[4]

Para cumplir con estas funciones la Comisión de Evaluación Judicial debe estar integrada por personas con la preparación, la experiencia, el conocimiento, la verticalidad y la reputación necesaria para evaluar el desempeño de los jueces y juezas de Puerto Rico. Por ello, alarma que la Mayoría trastorne --otra vez-- la operación de la Comisión. Una Comisión que, con sus integrantes actuales, le estaba sirviendo bien al Poder Judicial. Si a este Tribunal le interesara realmente procurar la eficiencia y excelencia en la labor que realiza la Comisión de Evaluación Judicial, en lugar de intercambiar miembros con otras Comisiones y mover fichas, debió examinar las cualificaciones individuales de los integrantes de cada Junta o Comisión, y evaluar de manera integrada si sus

---

[4] La Comisión también tiene el deber de proveer un mecanismo para ofrecer información a la Rama Ejecutiva sobre la renominación y/o ascenso de los jueces y las juezas y obtener información que ayude en la determinación de decisiones administrativas en el Poder Judicial.

destrezas y experiencias complementan a los demás integrantes, o si enriquecen con su diversidad y visión el trabajo y el propósito de cada cuerpo asesor.[5] Además, debió respetar --en lugar de despreciar-- la experiencia robusta, prolongada y distinguida que ha sido el criterio rector para recomendar a otros profesionales a que continúen ejerciendo funciones asesoras para este Tribunal.

Descartar a integrantes de la Comisión de Evaluación Judicial bajo tales criterios es tan absurdo como caótico es, este "quita y pon" de miembros de uno de los organismos más vitales del Poder Judicial.

Ello es particularmente decepcionante dado que, para lograr la composición anterior de la Comisión, este Tribunal llegó a un consenso y escogió a personas de integridad intachable. Como resultado, contábamos actualmente con personas como la Sra. Frances Torruella de Alustiza, quien es psicóloga, la Lcda. Beatriz Vázquez de Acarón, quien litigó extensamente en el área del Derecho de Familia y el Lcdo. Carlos Ojeda González, quien fue juez durante 16 años y es profesor. Son personas que poseen una experiencia

---

[5] Nótese, además, que no es adecuado el intercambio por miembros de la Junta del PEJC, cuyas funciones son incomparables a las que realiza la Comisión de Evaluación Judicial. Los miembros de la Junta del PEJC tienen la encomienda de velar por el cumplimiento de los requisitos del Reglamento del PEJC. Estos incluyen certificar el cumplimiento del requisito de educación jurídica continua, considerar casos de incumplimiento y someter al Tribunal Supremo el correspondiente informe con sus determinaciones y recomendaciones para la acción que corresponda, entre otros asuntos. Si bien esta Junta realiza una labor importantísima como brazo administrativo del poder inherente del Tribunal para regular la profesión legal, estimo que conforme a las funciones que se les delega a los miembros, las exigencias y requisitos para ejercerlas son sumamente distintas a las que se requieren para pertenecer a la Comisión de Evaluación Judicial.

incomparable y un juicio independiente. Su entrega es emblemática del servicio generoso y desinteresado a la Comisión y al País. En cuanto a la señora Torruella de Alustiza y la licenciada Vázquez de Acarón, aprovecho estas líneas para agradecerles y destacar su servicio excelente a la Comisión por más de dos décadas. Su aportación como memoria histórica y sus conocimientos de los procesos administrativos, lejos de ser cualidades o defectos para no extender sus términos, debieron ser las razones de peso para que permanecieran en sus funciones. Igualmente agradezco personalmente al Lcdo. Carlos Ojeda González, que sirvió con desprendimiento y sensibilidad durante los pasados tres años.

Es por todo ello que me preocupa que el curso de acción de la Mayoría lacere la confianza del País en el proceso de evaluación de juezas y jueces, particularmente ante los cuestionamientos públicos que han surgido sobre el designado para sustituir a la licenciada Vázquez de Acarón, el ex juez Jorge Lucas Escribano Medina. En ausencia de razones objetivas que puedan justificar estos cambios, sería una lástima que se percibiera que factores exógenos han pesado en la determinación para designar a nuevos miembros que no cumplen el mínimo de lo que se espera de las personas que tendrán a cargo la evaluación de nuestra Judicatura. Por tal razón, la sustitución de la licenciada Vázquez de Acarón con el licenciado Escribano desmerece el lustre que debe caracterizar a la Comisión. La primera ha estado a la altura del cargo y no existen fundamentos para

retirarle nuestra confianza y privar a la Comisión de su experiencia y conocimientos. En cambio, respecto al licenciado Escribano, la realidad es que durante su desempeño como juez este fue objeto de varios cuestionamientos por realizar, en más de una ocasión, manifestaciones públicas que se percibieron como contrarias a los Cánones de Ética Judicial. Los récords públicos reflejan un patrón de conducta en el cual este constantemente hacía comparecencias públicas y expresiones que se estimaron como discriminatorias y ofensivas, así como que detonaban una falta de circunspección y sobriedad que los Cánones les exigen a los jueces en funciones. De hecho, surge que las expresiones públicas del licenciado Escribano son contrarias a la política de igualdad y cero tolerancia al discrimen del Poder Judicial, lo cual pone en tela de juicio su capacidad para evaluar objetivamente el desempeño de los jueces y juezas sobre asuntos relacionados con este tema.[6]

Una de las piedras angulares de nuestro orden constitucional, democrático y social es el respeto a la dignidad humana. El valor que recoge esta regla implica que, a todas las personas por igual, se les debe respetar y proteger por el simple hecho de ser personas, con independencia de cualquier criterio diferenciador como la raza, la religión, el género, la orientación sexual, o su

---

[6] Basta examinar algunas de las citas textuales que el Juez Asociado Colón Pérez incluyó en su Voto Particular Disidente, así como tantas otras, aún más lamentables, que son de fácil corroboración, para comprobar esto.

origen social. **Todos** los seres humanos debemos disfrutar y ejercer **todos** los derechos en igualdad, sin discriminación alguna por dichos motivos. Por eso, las expresiones homofóbicas, racistas, sexistas, xenofóbicas, y otras, además de ser discriminatorias, denotan el irrespeto profundo hacia la dignidad humana por parte de quien las profiere.

La Judicatura, al igual que la Comisión de Evaluación Judicial, se debe componer de personas con trasfondos diversos que enriquezcan la discusión y el trabajo que llevan a cabo. Sin embargo, a nadie se le ocurriría designar a la Comisión de Evaluación Judicial a un supremacista blanco que públicamente hiciera expresiones racistas. Tampoco se nos ocurriría nombrar a una persona que hiciera comentarios o chistes despectivos y ofensivos de inmigrantes o personas de cierta nacionalidad. No nombraríamos a un recaudador político-partidista que públicamente hiciera comentarios despectivos e insultantes de todos los miembros de otro partido, ni de un activista de la comunidad LGBTTQ+ que arremetiera contra las iglesias, los pastores o los sacerdotes. Sencillamente en el Poder Judicial no hay espacio para personas que se expresen públicamente de esa manera. ¿Por qué, de todos los abogados y abogadas que existen en Puerto Rico, este Tribunal nombraría a una persona que se expresa de forma discriminatoria, despectiva, ofensiva y con expresiones de odio contra grupos minoritarios? Debe quedar claro, mi postura nada tiene que ver con las creencias religiosas del

licenciado Escribano. Como cuestión de hecho, me crié y soy creyente en la fe católica. Es la fe que practico y en la que crío a mis hijos. Pero cuidado y cautela, pues ello nunca puede ser una carta blanca --para mí o para nadie-- de utilizar nuestras libertades constitucionales para promover el odio. El licenciado Escribano puede expresar su sentir --ese es su derecho constitucional-- pero no tiene derecho a pertenecer a la Comisión de Evaluación Judicial.

Las creencias religiosas o políticas, la raza, el género, el origen social o cualquier otra característica que identifique a una persona que desempeñe una función pública son absolutamente inconsecuentes, <u>siempre que se mantenga la imparcialidad, el respeto a la dignidad humana y la ecuanimidad</u>. Designar a una persona que incumpla de manera abismal con este criterio envía un mensaje nefasto al País de parte de quienes estamos llamados a promover y defender las garantías constitucionales de igualdad, no discriminación, imparcialidad y trato equitativo. El Poder Judicial, desde todas sus dependencias y organismos --lo cual incluye a la Comisión de Evaluación Judicial-- tiene que rechazar conductas y expresiones discriminatorias que atenten contra la equidad y los principios más básicos de la justicia.

Esa conducta discriminatoria es condenable en cualquier ámbito, pero es aún más rechazable cuando se produce en el seno del Poder Judicial. **No hay espacio para el discrimen, de ninguna naturaleza, en los tribunales.** Por esto, resulta incomprensible que cinco jueces de este

Tribunal avalen con su voto expresiones discriminatorias --y francamente disparatadas--[7] en lugar de combatirlas y repudiarlas severamente. No puedo estar de acuerdo con esta actuación del Tribunal que desestabiliza la composición de la Comisión de Evaluación Judicial y perturba los cimientos mismos que deben regir la conducta de nuestros jueces y juezas. ¿Cómo puede el Lcdo. Escribano evaluar si los jueces y juezas están cumpliendo con su mandato de adjudicar con imparcialidad, ecuanimidad y sin discrimen, cuando él mismo no cree en esa igualdad tan medular para la función judicial? Es, francamente, desconcertante.

Por ende, rechazo este artificio trastornador y disiento enérgicamente.

Maite D. Oronoz Rodríguez
Jueza Presidenta

---

[7] Como, por ejemplo, equiparar la homosexualidad a la pedofilia.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re:*

Designación Miembros de la
Comisión de Evaluación Judicial

EN-2021-002

Voto Particular Disidente emitido por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico a 29 de julio de 2021.

> *"Desearía poder callar, pero no puedo, y no lo haré".* Desmond Tutu, Premio Nobel de la Paz.[8]

Aun cuando hubiésemos estado conforme con la gran mayoría de las designaciones que hoy se realizan a la Comisión de Evaluación Judicial, -- habiendo fracasado en nuestros intentos para que todos los y las integrantes de la referida Comisión gozaran del voto unánime de los jueces y las juezas que componen

---

[8] Desmond Mpilo Tutu (Desmond Tutu) es uno de los activistas de derechos humanos más reconocidos de Sudáfrica quien obtuvo el Premio Nobel de la Paz en el 1984 por sus esfuerzos para poner fin al *apartheid* en dicho país. Nacido en el 1931 en Klerksdrop Sudáfrica, se convirtió en el primer arzobispo negro de Ciudad del Cabo y Johannesburgo.

este Tribunal --, los valores de respeto al prójimo que desde muy temprano nos inculcaron en nuestro hogar, nos mueven a respetuosamente disentir del nombramiento que hoy una mayoría de mis compañeros y compañera de estrado le extienden al licenciado Jorge Lucas Escribano Medina (en adelante, "licenciado Escribano Medina") como miembro del organismo al que hemos hecho referencia. Organismo que, como sabemos, se encarga del sistema de evaluación de los jueces y juezas que forman parte del Poder Judicial de Puerto Rico. En esencia, dos son las razones que nos mueven a ello. Nos explicamos.

I.

De entrada, y como la primera de esas razones que nos lleva a no estar de acuerdo con el nombramiento del licenciado Escribano Medina como Comisionado de la Comisión de Evaluación Judicial, se encuentran las serias preocupaciones que albergamos producto de determinadas expresiones públicas realizadas por el referido letrado, las cuales denotan su falta de deferencia y/o respeto hacia los postulados de separación de iglesia y Estado consagrados tanto en la Constitución de los Estados Unidos de América, como en la Constitución del Estado Libre Asociado de Puerto Rico, y hacia aquellos y aquellas que los hacen

valer.[9] Preceptos constitucionales que, como sabemos, todo juez y toda jueza -- en sus quehaceres judiciales -- está llamado a defender.

Si bien somos conscientes -- y así lo hemos hecho valer en previas decisiones nuestras -- que la cláusula de libertad de culto contenida en la Primera Enmienda de la Constitución de los Estados Unidos de América, Enmda. I, Const. EE. UU., LPRA, Tomo I, así como en el Art. II, Sec. 3 de la Constitución del Estado Libre Asociado de Puerto Rico, Art. II, Sec. 3, Const. ELA, LPRA, Tomo 1, nos garantiza la práctica -- individual o colectiva -- de las creencias religiosas, no es menos cierto que la misma no releva a los integrantes del Poder Judicial de Puerto Rico de adoptar posturas neutrales que respeten la diversidad y heterogeneidad que permea la sociedad puertorriqueña y que propendan a la tolerancia y el orden público. Véase, *Sucesión*

---

[9] Aunque han sido varias las expresiones de este tipo que ha realizado el licenciado Escribano Medina, a manera de ejemplo queremos destacar las declaraciones hechas por éste en entrevista realizada por el señor Advin Pellot, y publicada en las redes sociales de este último. Allí, con total candidez, el licenciado Escribano Medina expresó:

> "No es ilegal creer en Dios. **La Constitución dice que Puerto Rico tiene una deidad y esa deidad es Dios Todopoderoso y el funcionario gubernamental que no entienda eso debe renunciar y largarse para su casa,** porque la Constitución dice que tú pones tu confianza en Dios todopoderoso y el funcionario público jura defender esa Constitución". Advin Pellot, *Entrevista al Juez Jorge Lucas Escribano*, (Minuto -0:02:55), https://youtu.be/Up5PR3AeWsU. (Énfasis suplido).

Al analizar lo anterior, nos preguntamos ¿qué nos quiere decir con esto el nuevo miembro de la Comisión de Evaluación Judicial? ¿Que aquellos jueces y juezas que defiendan los preceptos constitucionales -- entre ellos, el de la separación de iglesia y estado -- que un día juraron defender, deben estar preparados para "largarse para su casa"? ¿Será esto un nuevo elemento en la evaluación de nuestros jueces y juezas?

*Victoria v. Iglesia Pentecostal*, 102 DPR 20 (1974).[10] Evidentemente, las declaraciones públicas del licenciado Escribano Medina en un asunto tan complejo como el de separación de iglesia y Estado, **-- declaraciones que tiene todo el derecho de realizar --**, le apartan de los nobles preceptos antes reseñados que deben guiar la labor de todo juez o jueza; lo que, a nuestro juicio, le crearía un grave conflicto de interés en el momento en que tenga que evaluar el desempeño de aquellos togados y togadas que, correctamente, sigan tales preceptos.

Es decir, el problema no está en lo que el referido letrado piensa y expresa públicamente; eso es un derecho que él tiene, que está protegido y que se le respeta. El problema radica en que el licenciado Escribano Medina ha sido designado a formar parte de una Comisión que se encarga de evaluar a seres humanos que pudiesen pensar distinto a él, y que, por pensar distinto a él, -- como ya éste previamente ha advertido --, corren el riesgo de ser sancionados y/o no

---

[10] Como es sabido, la Sección 3 de nuestra Carta de Derechos establece, en lo pertinente, que "[n]o se aprobará ley alguna relativa al establecimiento de cualquier religión ni se prohibirá el libre ejercicio del culto religioso. Habrá completa separación de la iglesia y el estado". Art. II, Sec. 3, Const. ELA, LPRA, Tomo 1. Dicha cláusula opera *ex proprio vigore* y tiene rango fundamental. J. M. Farinacci Fernós, *La Carta de Derechos*, San Juan, Editorial Universidad Interamericana de Puerto Rico, 1ra Ed., 2021, pág. 83.

En cuanto a esto, nos comenta el profesor Farinacci Fernós que **"[l]a prohibición contra el establecimiento de una religión y la exigencia de total separación entre iglesia y estado, además de constituir un derecho individual, funcionan como mandatos contra el Estado, <u>independientemente de la voluntad individual</u>"**. Farinacci Fernós, *op. cit.* (Énfasis suplido).

ser evaluados y evaluadas objetivamente. A ello, en definitiva, no podemos acceder.

## II.

De otra parte, la segunda razón que nos mueve a no estar de acuerdo con la designación del licenciado Escribano Medina como Comisionado de la Comisión de Evaluación Judicial es una mucho más preocupante, ésta radica en el hecho de que un sinnúmero de las expresiones públicas del referido letrado también lo apartan de nuestra aspiración como colectivo de construir un País más justo, igualitario y equitativo para todos y todas las que aquí habitan.[11] Aspiración que, desde el primer día de nuestra llegada a este foro colegiado, nos

---

[11]    Para una cabal compresión de lo antes dicho, es menester examinar algunas de las recientes expresiones públicas en diversos medios noticiosos o radiales que reflejan el sentir del licenciado Escribano Medina sobre las nociones de trato justo, igualdad y equidad.

En esa dirección, debemos llamar la atención a lo sentenciado por el licenciado Escribano Medina en cierta entrevista realiza por Fausto R. Lora, *PRAXIS #4 Perspectiva de género desde el ámbito jurídico*, 13 de marzo de 2015, (minuto 11:00 en adelante) https://www.youtube.com/watch?v=VtlC8lc6C7Y En dicho segmento -- específicamente, a partir del minuto 11:00 -- el referido letrado sostuvo que:

> "**La perspectiva de género es un movimiento político que va dirigido a montar un gobierno que sea pedófilo, que sea bestialista y que sea homosexual**. ¿Por qué razón? Porque si tú eres heterosexual, tú eres un criminal hoy en día".

> "Pero estos movimientos quieren legalizar todo esto para alcanzar los niños. Y mira por donde van. **Empezaron luchando en los tribunales un derecho de ellos trastearse entre ellos los mofles en las camas** y, ¿por dónde vamos ahora? Vamos ahora por querer tocar los nenes también. Y, perate, aquí hay que hacer una distancia entre lo que practican los adultos y lo que quieres hacer con los niños. Y nosotros estamos con una agenda bien clara. Vamos a defender la niñez".

> "**El issue es que hay unas personas que no quieren ser ni hombres ni mujeres. Quieren ser camaleónicos**".

comprometimos defender contra todo enemigo interior o

exterior. Esta es, pues, otra razón que, a todas luces, debió

---

El derecho no funciona en base de a cómo tú te sientes. El derecho funciona en base a las realidades. A lo que tú eres, a lo que son los hechos y tú le aplicas la ley. Pero tú no puedes entonces, [que] mañana la decisión es otra. **Pues mañana me declaro hombre otra vez. Y al otro día soy transexual. Y al otro día soy bestialista y quiero casarme con el "poodle" mío. ¿Tú sabes? Esto está espectacular**".

Sobre las preocupaciones que hemos manifestado, véase también Zoán T. Dávila Roldán, *Juristas debaten sobre la perspectiva de género en la Inter Derecho*, 31 de marzo de 2015, https://aldia.microjuris.com/2015/03/31/juristas-debaten-sobre-la-perspectiva-de-genero-en-la-inter-derecho/. Allí, el referido letrado expresó:

"**[...] el movimiento ideológico de la perspectiva de género lo que quiere decir es que un grupo que practica en su cama lo que quiere practicar y el estado no puede meterse en esa cama. Pero se han bajado de sus camas, publican los que están practicando, que el estado se lo legalice, para que bajo esa pantalla puedan tocar a las puertas del Departamento de Educación y ahí puedan trepar a los nenes en las camas con ellos**.

**Por último, el ex juez cuestionó que realmente exista un problema de inequidad entre los sexos en Puerto Rico,** explicando que en las universidades estudian más mujeres que hombres, 'los pordioseros en las luces son hombres y no mujeres, la mayoría de los adictos a drogas son hombres y no mujeres y la mayoría de los pacientes mentales son hombres'.

**Asimismo cuestionó que la violencia doméstica sea causa de la inequidad entre los sexos, y lo atribuyó más bien al abuso del alcohol y drogas, así como las infidelidades en las parejas**". (Énfasis suplido).

Por último, y también relacionado al tema sobre la perspectiva de género, véase, Alerta Cristiano, *Alerta #144 Pastor Jorge Lucas Escribano*, 24 de enero de 2017 (minuto 0:10:22) https://youtu.be/x51Alu0m8Cg:

"**De sacar la perspectiva de género de la educación. Porque eso va dirigido a enfermar los niños, a romperle su siquis, su identidad.** A que el niño sea nena y la nena sea nene. Eso solamente se le ocurre a un pervertido, un inmoral. O sea, no a gente que tiene hijos, gente que son abuelos".

"Ellos hablan de equidad de género. Eso no existe. Lo que ellos tienen y existe en ese Departamento se llama perspectiva. Es que el nene sea nena y la nena sea nene. **Homosexualizar al nene y lesbianizar las niñas. Esa es la meta que había. No tiene que ver nada con igualdad. No tiene que ver nada con equidad**".

impedir que esta Curia avalara la designación del referido letrado como miembro de la Comisión de Evaluación Judicial.

Sin embargo, a una mayoría de este Tribunal, al parecer, esas expresiones tan degradantes recogidas en la nota al calce número cuatro (4) de esta ponencia, le parecen poco. Olvidan que discursos como éstos, tanto en el pasado, como en el presente, han costado vidas. **¡Basta ya! Se puede diferir, pero con respeto. Ese tipo de discurso tan nocivo no debe tener espacio en la casa de la Justicia.** No, al menos, para el juez que suscribe.

### III.

En fin, el proceder y las expresiones públicas desplegadas por el licenciado Escribano Medina, incluso algunas dirigidas en contra de la Jueza Presidenta de este Tribunal, Hon. Maite D. Oronoz Rodríguez, denotan que quien piense distinto a él y no comparta sus posturas, -- posturas que, sin lugar a duda, inciden sobre la autonomía y dignidad de los puertorriqueños y las puertorriqueñas --, no tendrá la oportunidad de ser examinado objetiva y justamente. Respetuosamente entendemos que, una persona con tales características, no puede realizar adecuadamente la delicada tarea de evaluar el trabajo de los jueces y las juezas.

Lamentablemente, a partir de este momento -- en el que una mayoría de este Tribunal da paso al nombramiento del referido letrado como Comisionado de la Comisión de Evaluación Judicial -- a ese tratamiento se someterán

nuestros togados y togadas. Ello, como mínimo, es sumamente preocupante.

Flaco servicio se le hace hoy al Poder Judicial y al País. Máxime, si tomamos en cuenta que, históricamente, las designaciones que los y las integrantes de esta Curia hemos realizado a las diversas comisiones que nos asisten, han gozado del consentimiento unánime de todos los jueces y juezas que componen este Foro. Esto, ya que elegíamos personas con una conducta intachable y conscientes de las repercusiones que el ejercicio de su cargo podría tener sobre la administración efectiva de la justicia. No vemos razón alguna por la cual hoy tenía que ser distinto.

IV.

Es, pues, por los fundamentos antes expuestos que disentimos del proceder seguido por una mayoría de este Tribunal en el día de hoy.


Ángel Colón Pérez
Juez Asociado